Our next case this morning is United States v. Jett and McKissick. Thank you, Your Honor. May it please the Court, Catherine Rhodes on behalf of defendants Duprece Jett and Damian McKissick. This appeal presents two unique but important procedural issues in sentencing. First, as the government concedes the District Court applied the wrong burden of proof in making findings under Section 1B.1.2.d of the sentencing guidelines when the beyond a reasonable doubt standard was required. It is undisputed that the Court applied the preponderance standard and that the beyond a reasonable doubt standard was required. Now, the Court's use of the preponderance standard when creating new counts of conviction that were never put before a jury or found by the judge beyond a reasonable doubt cannot be said to have been error in this case. Second, the Court made a second procedural error. It increased defendant's sentences at resentencing on this remaining conspiracy count by 21 months for Mr. Jett and 27 months for Mr. McKissick, which is about a two-year increase. And it did so by citing and giving the identical reasoning it gave at defendant's first sentencing hearing, and it came to two very different results. Under the circumstances of this case, when the only new evidence at resentencing was the defendant's additional mitigating evidence, the Court should have given a reason why it was giving a two-year disparity between defendant's first and second sentences. Turning to the first error in this case, the use of the preponderance of the evidence standard, the question here really is, was this error harmless? And it wasn't. You know, it's the government's burden here to prove harmless error, and I don't think they've that burden to show this Court that the Court's choice of sentence did not depend on the burden of proof here. Ms. Rhodes, before you get into the substance of your argument, please, how did you raise this argument before the District Court? Why haven't you waived or put this in a position that we should be reviewing this under plain error? Yes, Your Honor. So, both defendants preserved this issue. Turning to Mr. McKissick first, he's explicitly in a letter before the Court, before his resentencing hearing, he is at docket entry 357 at page 7. He specifically told the Court, and his alternative argument was, assuming the Court rejects his constitutional challenges to the grouping, he said, 1B12D tells the judge to, in fact, use a beyond a reasonable doubt standard. So, he did make that argument in his letter before resentencing. But with respect to Mr. Jett... But was it yet in the context of his argument that he was entitled to a jury trial on this? So, this was at the end of his letter. The first several pages, five, six pages of his letter was focusing on the lack of a jury finding on these issues. But he did make the alternative argument, recognizing the Court may disagree with him, that if the Court's going to apply this, he explicitly said that the section tells the judge to, in fact, use a beyond a reasonable doubt standard. And so, when he's saying that, he's talking to, if the Court's going to reject his argument, the Court has to make the findings beyond a reasonable doubt. And Mr. Jett, at his resentencing hearing, he also explicitly told the Court, at the end of his objections, recognizing the Court may overrule his objections, that grouping was inappropriate at all. He made the if it's going to overrule his grouping objection, that 1B12D requires the Court to make findings sitting as a trier of fact. And he did so on page seven of the appendix. And what's even more important to show that they raised this issue and preserved it for appeal is in looking at the context of their arguments throughout this entire case. They made objections before the trial that this should be put to a jury, and that was rejected. They made objections, again, to the reasonable doubt finding. And so, as the case... But in making those during trial and before trial, and even in their sentencing position, how did it alert the Court? Because the whole point is, you have to give the District Court the opportunity to address this. Otherwise, we're going to review it under plain error. How did they alert the Court specifically that they thought the Court should be applying the and they certainly told the Court they should have received a jury trial on this issue. This wasn't something the Court should be determining. They wanted a unanimity instruction on it. But I didn't see in the transcript and in the objections to the PSR and the submissions prior to sentencing any direct argument that, Judge, if you're going to decide this issue, you must make this determination beyond a reasonable doubt. Yes, Your Honor. And so, again, their last plea to the Court at sentencing for Mr. McKissick, it was his letter at record 357 at page 7 and Jett at appendix 7. Their last plea to the Court recognizing that their objection to the grouping analysis at all was that if you, Court, are going to apply this analysis, you have to apply the requisite burden of proof. And that being the standard sitting as the trier of fact. And that under Rule 51 is all they needed to do, is to alert the Court that they were asking the Court if they're going to overrule my objection, that you apply this standard. And that's sufficient to preserve this for appeal. Now, turning back to whether this error was harmless, it's important to understand why the beyond a reasonable doubt standard is required for this particular guideline, because it is a little unusual when the rest of the guidelines require only a preponderance standard. The Sentencing Commission here made an intentional decision that it was so important that these findings be made beyond a reasonable doubt, because what the Court is doing is creating new counts of conviction that were never put to a jury of defendant's peers. And so, we want to be extra careful in this circumstance that the Court is not creating these new counts of conviction when it hasn't made these requisite findings under the heightened burden of proof, because the risk is that we might be putting defendants away for extra time when the Court didn't make these findings. And that's what happened in this case. The Government cites a few one or two passing comments made at Mr. Jett's hearing to suggest that this was harmless error and the error did not affect the Court's sentence. But if you look at the Court's comments in the context of both Mr. Jett's sentencing hearing and both defendant's sentencing hearings, I don't think you can say this is harmless. For one, these comments were only made at Mr. Jett's sentencing hearing, which occurred before Mr. McKissick's. And if you look at, for example, I think it's Appendix 11, where the Court makes the passing reference that there's more than preponderance of the evidence, it's evidence beyond a reasonable doubt. If you turn the following page to Appendix 11, where the Court, after announcing she's applying the preponderance standard for 1B12D, very clearly states that the Court is going to find that the evidence at trial was sufficient to show that Mr. Jett and Mr. McKissick and Mr. Walker were co-conspirators in this conspiracy, and then overruled the objection to the grouping analysis. So I think that statement makes it very clear that when the Court made a passing comment or two about the overwhelming evidence, that she was really talking about the sufficiency of the evidence before the jury to convict defendants on this conspiracy, and not that the Court itself was making these findings and evaluating the evidence, as if she had to do it, as if she were the fact finder. And this is, I think, even more highlighted when you look at the fact that this only occurred at Mr. Jett's hearing. Mr. Jett's hearing occurred first. Before you move to Mr. McKissick, the District Court was very explicit in talking about the 1B1.2 enhancement. She found that there was more than a preponderance of the evidence, and I'm quoting from her, it was evidence beyond a reasonable doubt and very strong direct and circumstantial evidence of Mr. Jett's participation in the conspiracy, in all of these acts in the conspiracy. She didn't say the jury found that. She specifically said it was evidence beyond a reasonable doubt. How do you get around that under a harmless error analysis? Yes, Your Honor. So I think that statement is problematic if you look at it in isolation. But if you flip to the next page, when the Court is doing her purported 1B1.2D analysis, at the end of appendix page 11, line 21, she makes her conclusions based on that and says, so the Court is going to find that the evidence at trial was sufficient. And so I don't think it's, I think what she was saying on page 10 is, again, referring to the sufficiency of the evidence. But at a minimum, what she's doing is unclear, and I don't, it does not satisfy the requirements of 1B1.2D, because there's no specific, you know, she's not addressing each object offense. Her passing comment at appendix- It was more than passing. She specifically said it was evidence beyond a reasonable doubt that they proved not only his participation in the conspiracy, but all of the acts in the conspiracy. That seems pretty specific. Well, so I don't think it's, she's referring to the object offenses collectively in that, in that paragraph. You know, again, if we assume that she is making a finding under 1B1.2D, and this Court disagrees that she's referring to the sufficiency of the evidence standard there, I still don't think that's enough that the Court had to do to satisfy the requirements under 1B1.2D, which talk about making these findings with respect to each object offense. I think it's reasonable to expect that the Court, when applying this particular guideline, because of the sensitivities in creating a new count of conviction for defendants here, that they have to go through and make findings on each specific object offense. The judge doesn't have to belabor the point, but I don't think just a passing high-level reference collectively referring to the object offenses is sufficient to meet the requirements of 1B1.2D. And more importantly, because these comments don't come up at Mr. McKissick's hearing, which again occurred after Mr. Jett's. So it raises considerable doubt on whether the Court really understood how 1B1.2D is supposed to be applied, what the burden of proof was. But maybe that means there's a separate harmless error analysis for Mr. McKissick, which there should be. But I don't understand why, if she made one finding at Mr. Jett's, but not at Mr. McKissick's, Mr. Jett should get the benefit of anything that wasn't said at Mr. McKissick's. That's not necessarily what the law says. Well, in Mr. Jett's, she doesn't refer to just Mr. Jett himself. So she does refer to findings she's making with respect to Mr. Jett, Mr. McKissick, and Mr. Walker. And so I do think it is important then to look at what she does in Mr. McKissick's, where she doesn't refer to the beyond a reasonable doubt standard at all. She's very clearly applying the preponderance of the evidence standard and only makes findings under that standard. And so if she really was convinced, as she says in Mr. Jett's, that she was making findings beyond a reasonable doubt, it's logical to expect she would have also made similar comments at Mr. McKissick's. And it does raise doubt on whether she applied a meaningful 1B, 12D analysis. And that's why I don't think the government has shown that this was harmless error, and that we shouldn't take comfort in this comment on page 11. It doesn't appear in Mr. McKissick's, and again, suggests that it maybe was the sufficiency of the evidence standard. Ms. Rhodes, why wouldn't that go to the harmlessness as opposed to the error? Because the harmless error analysis assumes that there was an error. So let's say that judge did err on applying the preponderance standard. The question of harmlessness is, would it have mattered? I do think it mattered here, Your Honor, because again, I think it matters when you compare Mr. Jett and Mr. McKissick's transcripts. I don't think that because the judge opted to apply the preponderance standard, it could suggest she wasn't sure herself under the beyond a reasonable doubt standard. But even just looking at the differences in their transcripts, since she doesn't make these comments at Mr. McKissick's, I think it raises a question of whether she was confident beyond a reasonable doubt that defendants committed each and every one of the acts, object offenses that was listed in the single count of conspiracy. And if she wasn't 100% certain and we're not for sure, I don't think this court should affirm that. And instead, we should send it back and be extra careful before we put defendants away for extra time based on these findings that may not have been made. And it's not clear that they were. What do you think the sentence should be? I think, Your Honor, that that is a question for the court. What do you think it should be? I don't. So that turns to the second issue on appeal on whether 230 months was sufficiently explained by the district court. And I think because there is no explanation in the record for the disparity between the first and the second sentences defendants received, it really raises a considerable question on where this 230 months came from. And because there is no explanation in the record and the court cited identical reasoning at both their sentences, I don't think, you know, we're not even in a position to challenge the reasonableness of the court decided to give a different sentence on count one at resentencing, which she was definitely within her power to do. But she also had was also required to explain how she got there and show her work. And I'd like to reserve my question. What do you think the sentence should be? So, Your Honor, based on, you know, defendants did not challenge their first sentences on the conspiracy count at their first appeal to this court. And so I think what we're asking for is if we're not challenging the 355-3A analysis that the court went through as a fundamental matter. There's no fundamental error in that analysis. The error is really the disparity between the first and the second sentence. And so if the court has a reason for giving 230 months, that's something we would need to consider when we went back down. But as it stands right now, we don't think it justifies anything more than what they were given the 209 and the 203 months at their first sentencing hearings. And so I'd like to reserve the remainder of my time for rebuttal. Thank you. Mr. Reed. May it please the court. Ryan Reitz for the United States. Judge Senev, I think you hit the nail on the head with the harmless error argument. Judge Pratt here was very explicit, at least at Mr. Jett's sentencing, that there was no harm because she said the evidence was beyond a reasonable doubt and it was 100 percent certain. And I think you heard from the arguments, first argument today, Mr. Jett's and McKissick do not really have much of an argument against harmless error. Their argument against harmless error really goes to the actual error that occurred. But I do want to mention, Your Honor pointed out the difference between Jett and McKissick, which I think was not maybe sufficiently touched on in the briefs. So I have four reasons why it's harmless as to Mr. McKissick as well as Mr. Jett. First of all, Mr. Jett and Mr. McKissick were always treated in tandem in this case. That's true from the government, the defense, the court. There's really no reason to separate them. So I think especially a harmless error and plain error, what Judge Pratt said at Mr. Jett's resentencing can apply to Mr. McKissick's. The second point on that, at the joint initial sentencing, Judge Pratt said she had, quote, no doubt whatsoever that Mr. McKissick, identifying Mr. McKissick this time, was the person that committed the three robberies. So the court can consider that as well. Three, the evidence incriminating both Mr. Jett and Mr. McKissick is essentially an equipoise. There's really no distinguishing factor between the two. So if this sort of goes back to the tandem point, if the judge thinks it's 100% for Mr. Jett, it stands to reason she thinks it's 100% for Mr. McKissick because the evidence is equal as to both. Fourth, and this is somewhat spinning off the first and third points, I think there is some fundamental fairness at work, too. The evidence against both is so identical that finding harmless error for this argument for one and not the other strikes the government as unfair, even if it would warrant a remand for one of the two. But there's no need for that because either it's harmless error and it's plain error. And I do want to circle back to the plain error. You're right that there was no direct argument about the quantum of proof necessary. Both parties, Mr. Jett and Mr. McKissick, told the court what their problem was with the application of 1B2. It was that it should not be applied because there was a lack of a jury finding and it was potentially a violation of the jury right and there was confusion. They did not point to the applicable standard of proof. The best that the defendants can come up with now is a pro se filing, one line and a pro se filing. Well, first of all, I'm not sure the court should consider that at all, considering Mr. McKissick was represented by counsel and this sort of double barrel shotgun simultaneous pro se and represented procedure is frowned upon. And so I don't think the court really should give that much credence anyway. Two, I think that statement really, if it was close, it was certainly more in the context of a complaint about the right to jury trial. Either way, when we look at what the attorneys representing the two defendants said, they did not highlight the standard of proof problem. Um, regardless of standard applies, do you agree? You came close to this in your briefs, but didn't quite go there. Do you agree that a beyond a reasonable doubt standard is what's applicable for a 1B1.2D determination, not preponderance? Yes, Your Honor. I suppose we hedged that a meant to apply. Yes. I mean, the courts are unanimous. Trier of fact, I don't think there's much doubt. I mean, there's not much wiggle room what what the sentencing commission wanted there. And of course, that's what they said they wanted. And like I said, perhaps I hedged more than I intended to. But yes, beyond a reasonable doubt was the necessary standard. But even though the court didn't apply that, it's harmless under any standard, whether it's preserved or whether it's error. Um, there are no further questions on that. Um, I can answer any questions on the sentencing explanation. The court wants me to, although it wasn't touched on in the opening portion of the argument, we would just say that reiterate what we said in our brief that this was a guideline sentence. It was both the same in real and relative terms as the sentence that Mr Jet and McKissick received their initial sentencing. The court the court's explanation was certainly sufficient to satisfy this court that the district court gave meaningful consideration to the 35 53 factors and the party's arguments. And the court's explanation clearly cleared the and there are no further questions on that point. Um, the government be happy to rest on its brief. All right. Thank you. Mr Rhodes, you had used all your time, but you may have a minute in rebuttal. We kept you busy with a lot of questions. Thank you, Chief Judge Sykes. Um, just briefly, um, with respect to Mr McKissick, the government made a comment about what the district court said at his first sentencing hearing a comment about having no doubt whatsoever that Mr McKissick participated in the conspiracy. Again, I think the fact that the court never made such a statement again at his resentencing and never made any comment about 100% certain beyond a reasonable doubt of Mr McKissick suggests that again, the court either didn't apply this correctly or wasn't necessarily sure herself sitting as a trier of fact. Um, and I don't think it's proper for the government to try to fill the gaps in the court's findings here for things she didn't invoke herself. Um, and the second issue is with respect to, um, the pro se letter Mr McKissick filed. Um, the court did accept that filing and considered it. And Mr McKissick's counsel referred both to the written objections and, um, the letter submitted by Mr McKissick as, um, there as containing their objections. So I think it's perfectly fine for this court to consider that. And, um, the government suggestion that, you know, more had to be said to preserve this issue is, um, inconsistent with the rule. And for that, we ask that the, um, sentences be vacated and remanded. Thank you, your honors. Thank you very much. Our thanks to both counsel. The case is taken under advisement.